```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------X
                                                            :
JUAN B. PUJOL MOREIRA, in his personal capacity             :
and as Personal Representative and Administrator of the     :
ESTATE OF NIEVES PUJOL a/k/a NIEVES MOREIRA                 :
MARTINEZ et al.,                                            :      20-CV-9380 (JMF)
                                                            :
                                Plaintiffs,                 :      OPINION AND ORDER
                                                            :
                -v-                                         :
                                                            :
SOCIÉTÉ GÉNÉRALE, S.A. et al.,                              :
                                                            :
                                Defendants.                 :
                                                            :
----------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

The heirs of former owners of Banco Pujol — a Cuban bank confiscated by the Castro regime in 1960 and absorbed into Banco National de Cuba ("BNC") — bring this suit against two French banks, Société Générale, S.A. ("SG") and BNP Paribas, S.A. ("Paribas"), for "trafficking" their confiscated assets by doing business with BNC, in violation of Title III of the Cuban Liberty and Democracy Solidarity Act of 1996, 22 U.S.C. § 6021 *et seq.*, commonly known as the Helms-Burton Act. In an earlier Opinion and Order, the Court dismissed Plaintiffs' claims on the ground that they were barred by Section 6084 of the Helms-Burton Act, which provides that an action for trafficking "may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur." 22 U.S.C. § 6084; *see Moreira v. Société Générale, S.A.*, 573 F. Supp. 3d 921 (S.D.N.Y. 2021) (ECF No. 60). Thereafter, Plaintiffs filed the operative Second Amended Complaint. ECF No. 67 ("SAC"). Defendants now move again, pursuant to Rule 12(b) of the Federal Rules of Civil Procedure, to dismiss. For the reasons that follow, the Court concludes that Plaintiffs' Second Amended Complaint fails to

remedy the timeliness problems that doomed their claims against SG. The Court reserves judgment as to the claims against Paribas pending further briefing.

## BACKGROUND

The Court described the relevant background in its prior Opinion and Order, *see Moreira*, 573 F. Supp. 3d at 924-25, familiarity with which is presumed. Accordingly, the Court provides here only a short overview before turning to Plaintiffs' new allegations in the Second Amended Complaint, which — to the extent they are well pleaded — are assumed to be true for purposes of this motion, *see, e.g.*, *Kleinman v. Elan Corp.*, 706 F.3d 145, 152 (2d Cir. 2013).

When Plaintiffs first brought this suit, they alleged that SG and Paribas trafficked their confiscated assets by operating credit facilities that made U.S. dollar-denominated loans to BNC. *See Moreira*, 573 F. Supp. 3d at 925. Significantly, however, Plaintiffs explicitly alleged that Paribas operated its credit facilities from 2000 to 2010 and that SG operated its facilities from 2004 to 2010. *See id.* at 928. As for the period after 2010, Plaintiffs alleged only that Defendants "continue[d]" to operate "in substantially the same manner" as before (albeit through Euro-denominated credit facilities). *Id.* at 928-29. In dismissing Plaintiffs' claims, the Court concluded that their allegations about Defendants' post-2010 conduct were conclusory and thus insufficiently pleaded and that Plaintiffs' allegations about Defendants' pre-2010 conduct, although sufficiently pleaded, were not enough to avoid Title III's two-year statute of repose. *Id.* at 928-30. The Court expressed skepticism about Plaintiffs' ability to address these problems, but it nevertheless granted them leave to amend "with the benefit of" its Opinion. *Id.* at 934.

The Second Amended Complaint includes new allegations in an attempt to demonstrate that each Defendant's conduct continued into the two-year repose period. As to SG, the Second Amended Complaint includes only one new such allegation: that SG trafficked their assets until

at least mid-2019 by "providing Cuban entities access to foreign currency," which "[u]pon information and belief . . . flow[ed] through BNC, which is the primary financial institution with whom foreign companies do business in or with Cuba." SAC ¶ 40; *see also id.* ¶ 42 ("[SG] continued, through at least late August or early September 2019, to provide the Cuban government — and, upon information and belief, BNC — access to U.S. dollars and other foreign currency that Cuba and its primary commercial banking arm (BNC) could not themselves access or provide to BNC's clients."). As to Paribas, the Second Amended Complaint alleges similarly that Paribas transacted with a Cuban military-linked investment firm and other foreign companies that do business in Cuba and that, "[u]pon information and belief, BNC [was] involved in at least some of th[ose] transactions because it is the primary financial institution with whom foreign companies do business in or with Cuba." SAC ¶ 56. In addition, however, Plaintiffs now allege that, "[a]ccording to a former Paribas compliance officer, Paribas routinely provides to BNC in Switzerland parcels of U.S. currency," that it did so in 2020, and there is "no reason to believe Paribas stopped." *Id.* ¶ 49. "Upon information and belief," the Second Amended Complaint continues, "BNC uses the U.S. currency provided by Paribas to continue to access international markets and conduct transactions, including on behalf of its clients, that it would not otherwise be able to access or conduct." *Id.*; *see also id.* ¶ 53 ("Through at least 2020, Paribas . . . provided physical U.S. dollars to BNC that BNC need[ed] to operate as a commercial bank but could not itself access or provide to its clients.").[1]

---

[1] In addition to these new allegations, Plaintiffs renew their allegations regarding Defendants' pre-2010 credit-facilities, *see* SAC ¶¶ 37-39, 42 (SG); *id.* ¶¶ 45-47, 50, 53 (Paribas), and their allegation that Paribas's credit facilities were converted to Euros and continued to operate post-2010, *see id.* ¶ 48; *see also* ECF No. 81 ("Pls.' Opp'n"), at 5, 11. The Court discussed the inadequacies of these allegations in its prior Opinion, *see Moreira*, 573 F. Supp. 3d at 928-30, and thus does not address them again below.

## DISCUSSION

Defendants advance several arguments in support of dismissal, only two of which the Court discusses here. First, they renew their argument that Plaintiffs' claims are time barred, asserting that the new allegations of trafficking within the repose period are not well pleaded. *See* ECF No. 76 ("Defs.' Mem."), at 8-14. Second, they contend that the Court lacks personal jurisdiction over them because the only conduct that could support personal jurisdiction is time barred. *See id.* at 14-18. Under other circumstances, the Court would begin with the latter argument. *See, e.g.*, *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007) ("[A] federal court generally may not rule on the merits of a case without first determining that it has . . . personal jurisdiction[]."); *In re Rationis Ents., Inc. of Pan.*, 261 F.3d 264, 267-68 (2d Cir. 2001). But here, whether there is personal jurisdiction turns in part on whether and to what extent Plaintiffs plausibly allege relevant conduct within the two-year repose period. Accordingly, at least with respect to SG, the Court begins with the timeliness of Plaintiffs' claims. *See, e.g.*, *ONY, Inc. v. Cornerstone Therapeutics, Inc.*, 720 F.3d 490, 498 n.6 (2d Cir. 2013) ("Although we traditionally treat personal jurisdiction as a threshold question to be addressed prior to consideration of the merits of a claim, that practice is prudential and does not reflect a restriction on the power of the courts to address legal issues." (citations omitted)); *Chevron Corp v. Naranjo*, 667 F.3d 232, 246 n.17 (2d Cir. 2012) (addressing the merits before personal jurisdiction, noting that the court need not begin with personal jurisdiction where "the personal jurisdictional challenges are based on factual allegations that are, in this early posture, still under development"). The Court will begin Plaintiffs' claims against SG.

**A. Plaintiffs' Claims Against SG**

As noted, the Second Amended Complaint contains only one pertinent new allegation against SG: that it provided foreign currency to Cuban entities and that, "[u]pon information and belief" the foreign currency must have flowed through BNC because it is "the primary financial institution with whom foreign companies do business in or with Cuba." SAC ¶ 40.[2] Defendants argue that this allegation, without more, is conclusory and therefore not well pleaded. *See* Defs.' Mem. 11-12. The Court agrees. "A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." *See Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018). In the Second Circuit, pleading on information and belief is generally appropriate only where "the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Recs., LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citations omitted); *see Citizens United*, 882 F.3d at 384-85. Where neither condition is fulfilled, the allegation is no more than "pure speculation." *Singa v. Corizon Health, Inc.*, No. 17-CV-4482 (BMC), 2018 WL 324884, at *4 (E.D.N.Y. Jan. 8, 2018); *accord Williams v. Calderoni*, No. 11-CV-3020 (CM), 2012 WL 691832, at *7 (S.D.N.Y. Mar. 1, 2012).

Neither condition is fulfilled here. First, Plaintiffs' assertion that SG is in "exclusive possession of information and documentation relevant to [the allegations at issue]," *New York v. Town of Clarkstown*, 95 F. Supp. 3d 660, 681 (S.D.N.Y. 2015), is hard to square with their

---

[2] In their motion papers, Plaintiffs also assert that, according to a whistleblower, SG "continues to profit from . . . the very same conduct [it] was punished for in 2018" — namely, the U.S.-dollar-denominated credit facilities. Pls.' Opp'n 8. But that allegation appears nowhere in the Second Amended Complaint and, thus, may not be considered by the Court. *See, e.g.*, *In re Bystolic Antitrust Litig.*, 583 F. Supp. 3d 455, 489 (S.D.N.Y. 2022) ("[I]t is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss.").

5

reliance on a whistleblower with allegedly intimate knowledge of SG's Cuba-related business, *see* SAC ¶ 40. Plaintiffs tout the whistleblower as a "Paris-based [SG] employee" with "personal knowledge of the illicit transactions to which SG admitted [in the past]." SAC ¶ 40; Pls.' Opp'n 8. Indeed, it was this very whistleblower who alerted Plaintiffs' counsel to SG's alleged trafficking in the first place. SAC ¶ 40.[3] Plaintiffs' access to inside information thus distinguishes this case from those they cite in which information-and-belief pleading was found to be proper. *See Benjamin v. Consol. Edison Co. of N.Y., Inc.*, No. 17-CV-1720 (JMF), 2018 WL 1406620, at *2 (S.D.N.Y. Mar. 20, 2018) (finding information-and-belief pleading adequate where, as the defendant conceded, the plaintiff had "no way of knowing" the defendant's testing practices as to other employees); *Altman State Lighting, Inc. v. Smith*, No. 20-CV-2575 (NSR), 2022 WL 374590, at *6 (S.D.N.Y. Feb. 8, 2022) (finding information-and-belief pleading adequate with respect to whether the defendant "ha[d] close professional and personal relationships" with other people because that would "generally not be known outside of those individuals"). Put simply, Plaintiffs did have a "way of knowing" whether SG's transactions flowed through BNC. *See, e.g.*, *Zeitlin v. Palumbo*, 532 F. Supp. 3d 64, 69 (E.D.N.Y. 2021) ("[W]hen a plaintiff can acquire at least some information that would connect a defendant to the alleged wrongdoing, the 'mere mention of the possibility' of wrongdoing 'cannot be enough.'" (quoting *Citizens United*, 882 F.3d at 385)).

Nor do Plaintiffs show that their newfound allegation against SG "is based on factual information that makes the inference of culpability plausible." *Artisa Recs. LLC*, 604 F.3d at

---

[3] Plaintiffs provide no explanation for why, given their access to the whistleblower before their initial complaint, they did not include their new allegation in that complaint. The lack of a *new* source to support the new allegation suggests that Plaintiffs are merely trying to repackage the same information to which they were privy in their initial pleading.

6

120. To do so, Plaintiffs would have to accompany their allegation with factual assertions that "raise a right to relief above the speculative level." *Morana v. Park Hotels & Resorts, Inc.*, No. 20-CV-2797 (RA), 2021 WL 1164010, at *3 (S.D.N.Y. Mar. 26, 2021); *see also, e.g.*, *Warren v. ResMed Corp.*, No. 21-CV-8531 (JFK), 2022 WL 2334055, at *4 (S.D.N.Y. June 28, 2022) ("Because the Plaintiff's allegation [upon information and belief] . . . is not accompanied by a statement of the facts upon which the belief is based, the [complaint] fails to state a claim . . . ." (cleaned up)). But Plaintiffs offer only one factual averment to support their allegation: that BNC "is the primary financial institution with whom foreign companies do business in or with Cuba." SAC ¶ 40; *see also* Pls.' Opp'n 10. This is not enough. First, it is not clear that "providing Cuban entities access to foreign currency" necessarily means that such funds flow through a Cuban bank. SAC ¶ 40. Plaintiffs point to no laws, regulations, or information from their whistleblower to support that inference. Second, even if *that* inference were supportable, Plaintiffs cite nothing more than BNC's share of the banking market in Cuba to support their *next* inference, that SG's funds must have flowed through BNC. *Cf. Moreira*, 573 F. Supp. 3d at 929 ("[T]here is no indication that either Defendant renewed facilities available *to BNC* as opposed to other Cuban entities to which they made credit facilities available."). Plaintiffs' reliance on market share, without more, however, "does not show that [their] belief is based on factual information that makes the inference of culpability plausible." *Zeitlin*, 532 F. Supp. 3d at 71 (internal quotation marks omitted)). In short, the "inference of culpability" here rests on not one, but two speculative assertions and, thus, fails to clear the plausibility threshold.

In short, Plaintiffs' new post-2010 allegations against SG are not well pleaded and add nothing to what the Court considered in its prior Opinion and Order. Thus, "[w]hen push comes to shove, 'the well-pleaded facts do not permit the court to infer more than the mere possibility

of misconduct' after 2010." *Moreira*, 573 F. Supp. 3d at 929 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). It follows that Plaintiffs' claims against SG must be and are dismissed as untimely.

**B. Plaintiffs' Claims Against Paribas**

As noted, Plaintiffs include two pertinent new allegations (or sets of allegations) as to Paribas: first, that Paribas transacted with a Cuban military-linked investment firm and other foreign companies that do business in Cuba and that, "[u]pon information and belief, BNC [was] involved in at least some of th[ose] transactions because it is the primary financial institution with whom foreign companies do business in or with Cuba," SAC ¶ 56; and second, that "Paribas routinely provides to BNC in Switzerland parcels of U.S. currency," that it did so in 2020, and that there is "no reason to believe Paribas stopped," *id.* ¶ 49. The former does not do the trick for the reasons discussed above as to SG: The new allegations are conclusory and not well pleaded. Thus, the question of whether Plaintiffs' claims against Paribas can proceed turns on whether their allegation that Paribas provided cash to BNC in Switzerland cuts it.

The Court is not prepared to answer that question now because it implicates two issues that appear to be of first impression as to which the parties' briefing is not well developed. *First*, it is not clear that merely giving cash to BNC, without more, qualifies as "trafficking" within the meaning of the Helms-Burton Act, as broad as the definition of "trafficking" may be. (The Second Amended Complaint does allege, "[u]pon information and belief," that "BNC uses the U.S. currency provided by Paribas to continue to access international markets and conduct transactions, including on behalf of its clients, that it would not otherwise be able to access or conduct." SAC ¶ 49. But that allegation is arguably not well pleaded either.) Defendants do argue in passing that "the alleged delivery of cash to *BNC*, without more, falls far outside the

8

definition of trafficking."  Def.'s Mem. 14; *see also id.* at 22 (claiming, in a single sentence, that "the SAC's new allegations that [Paribas] provided BNC U.S. currency fails to allege that [Paribas's] transactions amount to trafficking"); ECF No. 84, at 6 ("There is no connection between the alleged 'parcels of cash' and any supposed credit facility with BNC or with Plaintiffs' confiscated property.  In other words, this reference to BNC is far removed from any definition of 'trafficking' . . . .").  But they do not develop the argument or discuss any relevant authority.  Plaintiffs devote even less ink to the issue, simply asserting that the deliveries "constitute trafficking in Banco Pujol property" whether or not they "are disbursements from a credit facility or payments on behalf of a Paribas client."  Pls.' Opp'n 11; *see also id.* at 18-21 (never discussing the allegation specifically in the trafficking analysis).

*Second*, even if the delivery of cash to BNC in Switzerland constitutes trafficking within the meaning of the Helms-Burton Act, it is not clear that the Court can, consistent with New York law and due process, exercise personal jurisdiction over Paribas given that the only conduct alleged to have occurred in New York (or the United States) occurred long before the repose period.  *See, e.g.*, *Wilder v. News Corp.*, No. 11-CV-4947 (PGG), 2015 WL 5853763, at *11 n.6 (S.D.N.Y. Oct. 7, 2015) ("[C]laims premised on the[] [violative statements] are time-barred.  Accordingly, these statements provide no basis for this Court to exercise specific personal jurisdiction over [the Defendant]."); *Skidmore v. Led Zepplin*, 106 F. Supp. 3d 581, 588 (E.D. Pa. 2015) ("[T]he only acts alleged to have been performed by the individual Defendants in this District . . . occurred at least seventeen years ago.  Given the three-year statute of limitations . . . [these] are not contacts upon which the Court may base its exercise of specific jurisdiction."). *But see Power Density Sols. v. IBM Corp.*, No. 19-CV-3710, 2020 WL 4876895, at *4 (N.D. Cal. Mar. 20, 2020) ("[The Defendant's] theory appears to be that if claims for the allegedly wrongful

conduct in [the forum state] are all time-barred, then such conduct does not 'count' for purposes of jurisdictional analysis.  While creative, this theory has no support in law or logic.").  That is true even if, as Plaintiffs contend, *see* Pls.' Opp'n 12-14, Paribas's pre-2010 conduct and its alleged deliveries of cash in Switzerland are properly viewed as a single, continuing act of "trafficking."[4]  After all, the offending conduct in New York took place long ago, the recent conduct itself has no apparent connection to New York (or the United States), and there is reason to believe that Paribas structured its activities in the interim to avoid potential liability in New York and the United States.  The parties have not cited, and the Court has not found, any case addressing whether New York's long-arm statute would apply in these unusual circumstances.  And even if personal jurisdiction would be proper under New York law, it is far from clear whether, in these circumstances, it would be "reasonable" to exercise jurisdiction over Paribas as required by the Due Process Clause — that is, whether asserting jurisdiction over a non-domiciliary that has, for over a decade (and for the entirety of the repose period), avoided any contact with New York (and the United States) "would comport with fair play and substantial justice."  *U.S. Bank Nat'l Ass'n v. Bank of Am. N.A.*, 916 F.3d 143, 150-51 (2d Cir. 2019) (internal quotation marks omitted).  On that issue too, the parties' briefing does not sufficiently aid the Court.

## CONCLUSION

For the forgoing reasons, Defendants' motion to dismiss is GRANTED with respect to Plaintiffs' claims against SG.  Further, because the Court previously granted Plaintiffs leave to amend and because Plaintiffs neither suggest that they have additional facts that would render

---

[4] To be clear, the Court does not need or want further briefing on that issue as the parties have already addressed it adequately.

their claims against SG timely nor request leave to amend again, the Court declines to grant Plaintiffs another opportunity to amend.  *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019).  By contrast, the Court reserves judgment with respect to Defendants' motion to dismiss Plaintiffs' claims against Paribas pending further briefing on the issues discussed above, namely (1) whether Plaintiffs' allegations that Paribas gave cash to BNC in Switzerland are sufficient to establish "trafficking" within the meaning of the Helms-Burton Act; and (2) if so, whether the assertion of personal jurisdiction over Paribas, under the unusual circumstances of this case, would be proper under New York law and consistent with due process.[5]  Plaintiffs and Paribas shall submit supplemental briefs on these issues, **not to exceed fifteen pages**, by **February 6, 2023**.

The Clerk of Court is directed to terminate ECF No. 75 and to terminate SG as a party.

SO ORDERED.

Dated: January 23, 2023
New York, New York

JESSE M. FURMAN
United States District Judge

---

[5]  The Court reserves judgment as well on Paribas's other arguments for dismissal, as they pertain to the merits of Plaintiffs' claims and it is necessary to determine first that the exercise of personal jurisdiction is proper.  *See* Defs.' Mem. 18-36; *see also, e.g.*, *Sinochem Int'l Co.*, 549 U.S. at 430-31; *Rationis Ents., Inc. of Pan.*, 261 F.3d at 267-68.