UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                                                       :

JUAN B. PUJOL MOREIRA, *in his personal capacity*   :
*and as Personal Representative and Administrator of the*  :
ESTATE OF NIEVES PUJOL a/k/a NIEVES MOREIRA  :
MARTINEZ et al.,                                          :
                                                                                       :       20-CV-9380 (JMF)
                                    Plaintiffs,      :
                                                                                     :     MEMORANDUM OPINION
                     -v-                          :            AND ORDER

SOCIÉTÉ GÉNÉRALE, S.A. et al.,               :

                                   Defendants.     :
------------------------------------------------------------------------X

JESSE M. FURMAN, United States District Judge:

       The heirs of former owners of Banco Pujol — a Cuban bank confiscated by the Castro regime in 1960 and absorbed into Banco Nacional de Cuba ("BNC") — brought this suit against two French banks, Société Générale, S.A. ("SG") and BNP Paribas, S.A. ("Paribas"), for "trafficking" their confiscated assets by doing business with BNC, in violation of Title III of the Cuban Liberty and Democracy Solidarity Act of 1996, 22 U.S.C. § 6021 *et seq.*, commonly known as the Helms-Burton Act. In a prior Opinion and Order, familiarity with which is presumed, the Court dismissed Plaintiffs' claims against SG as untimely. *See Pujol Moreira v. Société Générale, S.A.* ("*Pujol Moreira II*"), No. 20-CV-9380 (JMF), 2023 WL 359446 (S.D.N.Y. Jan. 23, 2023) (ECF No. 94); *see also Pujol Moreira v. Société Générale, S.A.* ("*Pujol Moreira I*"), 573 F. Supp. 3d 921 (S.D.N.Y. 2021) (ECF No. 60) (granting an earlier motion to dismiss, but with leave to amend). In that same Opinion, the Court explained that the timeliness of Plaintiffs' claims against Paribas turned in the first instance on whether certain conduct alleged in the Second Amended Complaint — to wit, that "Paribas routinely provides to BNC in

Switzerland parcels of U.S. currency," that it did so in 2020, and that there is "no reason to believe Paribas stopped," ECF No. 67 ("SAC"), ¶ 49 — qualifies as "trafficking" within the meaning of the Helms-Burton Act. *See Pujol Moreira II*, 2023 WL 359446, at *3. The Court ordered additional briefing on that question (and one other). *See id.* at *4.[1]

In assessing whether Paribas's alleged conduct within the relevant period constitutes "trafficking," the Court must, of course, apply the well-established standards that govern motions to dismiss. These standards require a court to accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. *See, e.g.*, *Lynch v. City of New York*, 952 F.3d 67, 74-75 (2d Cir. 2020). A claim will survive a motion to dismiss, however, only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). Significantly, "[t]he plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (cleaned up). At bottom, if the plaintiff's pleadings do "not nudge[ his or her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570.

---

[1] The other question was, if the alleged deliveries of cash qualified as "trafficking," whether it would be proper to exercise personal jurisdiction over Paribas. *See* 2023 WL 359446, at *4. Although personal jurisdiction is usually a threshold issue, the Court addresses the timeliness question first for reasons explained in *Pujol Moreira II*. *See id.* at *2.

Applying these standards, the Court concludes that Plaintiffs' allegations with respect to Paribas delivering U.S. dollars to BNC in Switzerland fall short. The Helms-Burton Act provides that any person who "traffics in property which was confiscated by the Cuban Government" is liable to "any United States national who owns the claim to such property." 22 U.S.C. § 6082(a)(1)(A). The Act then provides, in relevant part, that

> a person "traffics" in confiscated property if that person knowingly and intentionally —
>
> (i) sells, transfers, distributes, dispenses, brokers, manages, or otherwise disposes of confiscated property, or purchases, leases, receives, possesses, obtains control of, manages, uses, or otherwise acquires or holds an interest in confiscated property,
>
> (ii) engages in a commercial activity using or otherwise benefiting from confiscated property, or
>
> (iii) causes, directs, participates in, or profits from, trafficking (as described in clause (i) or (ii)) by another person, or otherwise engages in trafficking (as described in clause (i) or (ii)) through another person,
>
> without the authorization of any United States national who holds a claim to the property.

*Id.* § 6023(13)(A). As broad as this definition of "trafficking" is, the mere act of delivering cash to BNC — and that is all the relevant new allegation entails[2] — does not fall within it. The

---

[2] As the Court observed in *Pujol Moreira II*, the Second Amended Complaint does allege, "[u]pon information and belief," that "BNC uses the U.S. currency provided by Paribas to continue to access international markets and conduct transactions, including on behalf of its clients, that it would not otherwise be able to access or conduct." SAC ¶ 49; *see also id.* ¶ 53 ("Through at least 2020, Paribas . . . provided physical U.S. dollars to BNC that BNC need[ed] to operate as a commercial bank but could not itself access or provide to its clients."). But the Court noted that "that allegation is arguably not well pleaded." 2023 WL 359446, at *3; *see, e.g.*, *Citizens United v. Schneiderman*, 882 F.3d 374, 384 (2d Cir. 2018) ("A litigant cannot merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory."); *Boehm v. SportsMem, LLC*, No. 18-CV-556 (JMF), 2019 WL 3239242, at *2 n.1 (S.D.N.Y. July 18, 2019) (noting that an allegation upon information and belief "must be accompanied by a statement of the facts upon which the belief is founded, and cannot rest on pure conjecture and speculation" (cleaned up)). In their supplemental submission, Plaintiffs do

Second Amended Complaint plainly does not allege that the cash allegedly provided by Paribas was itself confiscated property. Nor does it include any facts concerning the amount of currency provided; the frequency of the deliveries; or, most significantly, what, if anything, BNC did with the currency and whether BNC gave anything to Paribas in exchange for it. In the absence of *any* factual context, the Second Amended Complaint does not support a plausible inference that the deliveries were "commercial activity," let alone commercial activity that involved "using or otherwise benefiting from" Plaintiffs' confiscated property. 22 U.S.C. § 6023(13)(A)(ii). Nor does it support a plausible inference that, through the deliveries, Paribas "cause[d], direct[ed], participate[d] in, or profit[ed] from" any trafficking, let alone any trafficking of Plaintiffs' confiscated property. *Id.* § 6023(13)(A)(iii). Put simply, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct" during the relevant period. *Iqbal*, 556 U.S. at 679; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

Significantly, Plaintiffs' own submission in response to the Court's request for additional briefing confirms that their arguments are based not on the mere act of giving cash to BNC, but rather on rank speculation about Paribas's reasons for allegedly doing so. That is, Plaintiffs repeatedly and explicitly predicate their arguments on conditions that may or may not be met:

> *If* BNC pays for the dollars Paribas delivers, Paribas necessarily "profits from" BNC's use of Banco Pujol's assets since those assets are an integral part of BNC's capital structure. 22 U.S.C. § 6023(13)(A)(iii). *If* Paribas is transferring cash on behalf of clients who have business with BNC, Paribas "participates in" BNC's trafficking by facilitating transactions that exploit Banco Pujol's assets. *Id.*

---

not even attempt to assert otherwise and, thus, are deemed to have abandoned any such argument. *Cf., e.g., Felix v. City of New York*, 344 F. Supp. 3d 644, 654 (S.D.N.Y. 2018) ("Courts may, and generally will, deem a claim abandoned when a plaintiff fails to respond to a defendant's arguments that the claim should be dismissed." (internal quotation marks omitted)).

> Paribas is also trafficking by engaging in "commercial activity using or otherwise benefiting from" Plaintiffs' confiscated property. 22 U.S.C. §6023(13)(A)(ii). . . . *If* Paribas is lending BNC the money, that lending benefits from confiscated property because Banco Pujol's assets "made BNC a more stable, less risky, and more desirable counterparty" for Paribas. SAC ¶ 54. *If* Paribas is facilitating transactions, those transactions use or benefit from Banco Pujol's assets because they made BNC a better counterparty for Paribas's clients or because they make use of BNC's services — services BNC provides thanks to the "assets," "infrastructure," and "equity" stolen from Plaintiffs. *Id.* ¶¶ 26-29, 42, 53.

ECF No. 95 ("Pls.' Supp. Mem."), at 2-3 (emphases added and footnote omitted).  The tell, of course, is Plaintiffs' repeated use of the word "if."  *If* the Second Amended Complaint included any of the allegations in Plaintiffs' memorandum, perhaps the purported deliveries would qualify as "trafficking."  (The Court need not and does not intimate a view.)  But as Plaintiffs effectively concede, the Second Amended Complaint does *not* include any of these allegations.  *See also* ECF No. 97, at 5 n.4.  As if to prove the point, Plaintiffs preface their discussion by observing that "[o]nly merits discovery will tell whether the dollars Paribas furnishes to BNC are disbursements from a credit facility or transfers on behalf of Paribas clients doing business with or through BNC."  Pls.' Supp. Mem. 2.  That may well be true, but as the Supreme Court has expressly held, Rule 8 of the Federal Rules of Civil Procedure "does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions" and speculation.  *Iqbal*, 556 U.S. at 678-79.

In short, Plaintiffs have not "nudged their claims" of trafficking within the two-year period before they filed suit "across the line from conceivable to plausible."  *Twombly*, 550 U.S. at 570.  It follows that, for reasons the Court discussed in its prior Opinions, Plaintiffs' claims against Paribas are barred by the Helms-Burton Act, which provides that an action for trafficking "may not be brought more than 2 years after the trafficking giving rise to the action has ceased to occur."  22 U.S.C. § 6084.  Accordingly, Paribas's motion to dismiss must be and is GRANTED, and the Court need not and does not address Paribas's other arguments for dismissal.  Further,

because the Court previously granted Plaintiffs leave to amend and because Plaintiffs neither suggest that they have additional facts that would render their claims against Paribas timely nor request leave to amend again, the Court declines to grant Plaintiffs another opportunity to amend. *See, e.g.*, *Fischman v. Mitsubishi Chem. Holdings Am., Inc.*, No. 18-CV-8188 (JMF), 2019 WL 3034866, at *7 (S.D.N.Y. July 11, 2019); *see Pujol Moreira II*, 2023 WL 359446, at *4 (denying SG leave to amend on similar grounds); *cf. Pujol Moreira I*, 573 F. Supp. 3d at 934 ("[I]f [Plaintiffs] could have [cured their pleading defects] one assumes they would have . . . .").

The Clerk of Court is directed to enter judgment consistent with both this Memorandum Opinion and Order and *Pujol Moreira II*, and to close the case.

SO ORDERED.

Dated: February 16, 2023
New York, New York

_____
JESSE M. FURMAN
United States District Judge